Our next case is Sandwich Isles Communications v. United States, 2020, 1446. Mr. Smith. Thank you, Your Honor. Good morning. My name is Lex Smith. I'm the lawyer for Sandwich Isles Communications, which we frequently refer to as SIC. The only issue on this appeal is subject matter jurisdiction over a public utilities claim that a regulatory rate affected a taking of the public utilities property without just compensation. The law is well established that a public utility has the constitutional right to make such a claim. After the regulatory process is over, the rate has been set, the effects of the rate are known, and the rate denies the public utility a reasonable return on its investment. Let me start there. You say the the law is well established that damages claim under a taking theory can be asserted once the rate has been implemented. But I haven't seen anything that you've cited that says that is the case. The Duquesne case and the cases that follow it all reflect that that is the law, that there is a right to make a regulatory taking case when that happens. I see discussion by the Supreme Court saying you can argue that a regulation constitutes a taking for purposes of supporting an argument that therefore it should be viewed as arbitrary and there is a free-standing claim that gives you a right to damages. Your Honor, I respectfully disagree with the court's interpretation of the Duquesne case and the cases that follow it. Those cases reflect that a regulatory taking is affected where the utility is denied a reasonable return on the investment that it's made. That certainly is the premise of the claim that we made in the Court of Federal Claims. I suppose what I would say is that the Court of Federal Claims denied us, on the basis of jurisdiction, the ability to make our claim. If the Court of Federal Claims is going to rule that there is no claim, there is no right to make such a claim, I would think that that would be a different argument than the jurisdictional decision. Counsel, this is Judge Renner. It seems to me that the Court of Federal Claims didn't just throw out your case entirely. It said that it lacked jurisdiction and it points to 47 U.S.C. 402 as one of the basis for its determination. I look at Section 402 and it is pretty evident that this section is intended to resolve or it relates to disputes with the Federal Commission. Can you explain to me why 402 does not apply? Certainly, Your Honor. 402 covers the regulatory process to establish the rates with every public utility, including... I look at 402 and it speaks to the right of appeal. That seems to be outside of the regulatory process. Your Honor, I respectfully submit that I don't believe it is. The rate-making process includes a right to appeal the rate. This is true in the public utility cases in general, that there is an entire process involved in setting rates, appealing the setting of rates. No, it also applies. Subsection 1 says by any applicant for construction permits. It pertains to construction permits, station licenses, to a whole bevy of different types of causes of action. Of course. None of those applies here. In a rate-making context, what I'm seeing is that 402A provides for the appeal of the rate-making that is set. I understand that 402A covers numerous other FCC proceedings, but the whole concept here is that the taking claim is something that happens after the regulatory process has all been accomplished. But we said in Alpine that under 402B, you have to make your takings claim to the FCC and then to the D.C. Circuit. Why wouldn't the same principles apply under 402A? The reason I would say Alpine is not applicable here is, first of all, that involves a licenses or a termination of licenses. That's 402B, but why wouldn't the concept that there's an exclusive mechanism for objecting essentially to orders of the commission, why wouldn't that same concept apply under 402A? Because this is a regulatory taking based on the setting of rates rather than the cancellation of a license. More importantly... Why does that make a distinction? Because in Alpine, the taking was established at the time of the FCC action by terminating the the regulatory action, the rate has been felt and been understood. More importantly though, the appeal that's provided for here, the case law is unanimous that you can't make a taking claim on the appeal from these rate making decisions because the claim would not be ripe yet. So Alpine doesn't have that problem. Until the rate applies to you and isn't that exactly what you're saying here is that they applied this rate and that therefore that's why you weren't able to continue to benefit from the monies that you previously received? The takings cases involve certainly something that happens later. What the cases say, it's not until the total effect of the rate is known that a claim for a taking without just compensation can be made. And that goes to the ripeness question rather than jurisdiction. But what about the folding case where we said even if a decision doesn't fall within 402B, even if it's 402A, it's still 402, 402 and there is no gap for the Tucker Act to fill. Jurisdiction is not properly brought in the claim school. I would distinguish folding on the basis simply on the fact that it did not involve a taking. And again, what we have with a taking claim is that appeals from the FCC actions on these rate cases have expressly said repeatedly that our taking claim is premature at that time. So we couldn't have made it there. So I'll go on. My client's assets are in foreclosure. A number of them have already been sold at a Marshall sale. The others are the subject of an order for a judicial sale that's apparently going to take place at some time in the future. The SIC went through the whole rate-making process and was unsuccessful and is now at the point where its only available remedy is to pursue its claim for a taking. As I was discussing earlier, this is not different from any other public utility in the sense that you go through the rate-making process, the rate is set, there can be appeals involving the rate. I guess I've eaten into my rebuttal time a little bit. Before you sit down, let me just ask you, what is your response to the government's argument that no matter what happens, there's no property interest in having a particular benefit from the rate? I understand the question. Thank you. The rate that a public utility that serves rural customers receives is both the subsidy and the rate that it's allowed to charge its customers. The two come together. The reasonable investment-backed expectations are under which the property is purchased. The assets are purchased because of the Federal Communication Commission authorization and direction to buy the equipment in order to service the customers. The fact that in this case, some of the rate is provided by a payment by the customers does not make a difference in terms of the analysis of our claim. Moreover, I would point out that that is something that the Court of Federal Claims would be taking up after this court decides that it has jurisdiction. Thank you, counsel. We'll save four minutes of rebuttal time for you. Thank you very much. Ms. Rose? Thank you, Your Honors. May it please the Court. This is the first time that a case under 47-402-A has been before the Court, but the reasoning that the Court has applied and the other cases applying 402-B, including Fulton and Biltmore and Alpine, apply equally here. The Hobbs Act, which governs appeals under 402-A, provides that the courts of appeals other than this court has exclusive jurisdiction to enjoin, set aside, suspend, and hold or impart, or determine the validity of all final orders of the FCC. And so here, the trial court properly examined six claims to determine whether or not they were challenging orders of the FCC or matters that would become final orders of the FCC. You didn't cite Alpine to the Court of Federal Claims, did you? We did not, although I believe we did cite Horn and the... I apologize, I can't... I remember but I don't remember if it's Verita to the Court of Federal Claims. And we do acknowledge that Alpine is best understood as applying in Alpine, but we think that the logic there applies here as well. The Congress has determined that matters should be raised first with the FCC and then appealed to the Court of Appeals. And here, we're not saying that there is no path for FIC to bring a takings claim if it chooses to do so, but that the Court of Appeals, do you agree that there is a freestanding right to assert a request for damages under the takings clause? I think that what we assert is that a claim, even if it's a takings-based defense, the phrasing of Horn, to the FCC rate determinations would need to first be raised at the FCC and they need to have an opportunity to pass on the issue and potentially... Well, can the FCC award damages? They cannot award damages, but they could, since what is being sought is additional subsidy funding from the FCC-administered funds, provide relief that would forestall a determination that a takings claim has occurred. However, if after the FCC has determined its position on the arguments and whether or not additional funds should be permitted, the carrier would at that point have an opportunity to appeal the FCC's decision to either the DC Circuit or the Court of Appeals that would otherwise be applicable. So explain to me then how this happens. How does one assert the takings claim? What does the FCC have the right to do with respect to that claim? And then what would the Court of Appeals, the appropriate Court of Appeals have the right to do? The first step, as has been discussed in some of the cases that FICC relies on, such as the NRA-FCC Temp Circuit case addressing the 2011 transformation order, is to raise a challenge to the rate and to assert that it does not permit the carrier to sufficiently cover it if at that point if the FCC has the opportunity, has the authority to grant a waiver of the rate that it has set under the 2011 transformation order. If it denies the waiver that the carrier is requesting, the carrier then at that point can first appeal to the full commission and then if the lease has continued to not be granted the way that the carrier would like, then appeal to the Court of Appeals. So again, so what you're saying is that the way a takings claim is analyzed is whether or not the rate is so confiscatory or would be so confiscatory that it shouldn't be allowed to be employed, right? But that still doesn't say anything about if it is confiscatory and it has been employed, whether there's a right to a recovery of any losses by way of a damages calculation. That even if it could not, well, Courts of Appeals have reviewed takings cases that were first brought at the FCC and then raised to them and to the extent that a court with the proper jurisdiction found that the FCC's orders were an error, it could remand for further proceedings so that it may not, it would have the authority to review the claim and if, for example, there was a situation where a carrier sought a waiver and was granted a waiver but it was not in the amount that the carrier thought was sufficient, there could be an analysis whether or not the amount that was received foresaw the takings claim. Well, how would you characterize damages in that interest? Contractual damages or are we looking at a property interest at some time? Well, I first would say that we do maintain that there's no property interest in a subsidy, but I will also acknowledge that that may be slightly different than whether or not there's a property interest in the carrier's own property that could be affected by a corporate asset. Potentially, though, it wouldn't necessarily extend to those parts. For example, if a company like FIGS did engage in massive debt that was unrelated to its ability to serve the customers that it's required to do under the FCC directive, then that would not be part of the calculation. It would be whether or not they were making enough of a return to cover the cost of providing those services, required services. Why hasn't the petition challenging the suspension of the high-cost subsidies been ruled on? It was filed in 2015. I do not have information on that. That is pending before the FCC and the FIG has filed a petition for writ of mandamus that was denied by the D.C. Circuit in 2018. And if it thinks that it has grounds to do so, it could ask, it could raise a new challenge to the D.C. Circuit. But the particulars as to why it has yet to be ruled on is not information that I have. So your argument that there's no property interest in a particular rate or property interest in high-cost subsidies, that's really a merits argument, isn't it? I mean, how does that come into play when we're assessing a jurisdictional dismissal? That was raised as an argument in the alternative if it was determined that there is jurisdiction under the Tucker Act. But again, we do not believe that the Tucker Act provides jurisdiction here as it is a gap-filling statute. And here Congress has provided that claim or that appeal relating to FCC orders. And it is broadly relating as the Supreme Court found in the ICC world, an unhappy litigant cannot seek to evade the FCC's orders by putting that and seeking to have the order enjoined or preserve it. The point is, if it's within the scope of the order and would affect the validity of the order, that's a matter committed to the exclusive discretion of the FCC. So am I understanding what you're saying is that the liability aspect of the takings charge, whether it's confiscatory, whether it would be a taking, that has to be assessed through the FTC and then ultimately through the Court of Appeals. But then maybe the Court of Federal Claims would have the authority to award damages at the end of the day? Is that what you're saying? No. And again, I would note that it's not damages, it's compensation that is available under the Fifth Amendment. Well, same thing, essentially. Yes, except that if the FCC's action sufficiently provides compensation, then the Court of Appeals can evaluate that. And at that point, the takings claim would have been litigated and there would be further causes of action for review in the Court of Federal Claims. So you're saying following the Boro 2A and Hobbs Act process could effectively moot any request for compensation? Yes. And in the Horn cases before the Supreme Court, the Supreme Court rejected an argument that after raising takings-based defenses at the USDA and to the Ninth Circuit, the litigants still had an opportunity to raise the claim at the Court of Federal Claims and found that because they had an avenue under the law at issue there to raise their takings-based argument at the agency with a path for judicial review, that was the end of the matter. Anything further, Counsel? No, thank you, Your Honor. If the Court has nothing further, we rest on the argument stated in our brief. Thank you, Ms. Rose. Mr. Smith has four minutes of rebuttal time. Thank you, Your Honor. In every public utility case, there is a rate-setting process. The function of the rate-setting process is to try to find a reasonable rate. And that's no different in this case. The FCC provides that process through various means to try to find a reasonable rate. But in every public utility situation, if the rate process doesn't work for some reason and does not generate a sufficient return on investment, there is a right to make a takings claim, a right under the Constitution. I submit to you that nothing in the Hobbs Act or in the intent to deny a public utility the right that the case law recognizes public utilities are entitled to. Wouldn't you say that Section 402 has an effect on that right to a takings claim that you speak commission's orders and decisions? And when I first started this case, I started looking at, well, aren't we dealing at bottom? Aren't we reviewing? Aren't we being asked to review the effect of an order and decision of the commission? And go ahead, sir. No, no. I just wanted to say, I believe, again, I believe that would be true of every public utility case. In some sense, Ms. Rose's claim that we are objecting to the rate that was set and to a FCC order setting a rate has some appeal, but there is... So just put the rate, put that word aside for a minute. Are we dealing here with a commission order or decision? Your Honor, as I say, it's possible to view it that way, but that's not... If that were the way that it was properly viewed, no public utility would have a right to make a takings claim when they'd been denied a return on their investment. And that's clearly not the law. So this SIC is no different than the other public utilities that have been held to have the right to make takings claims following the entire rate process and following the point where the total effect of the rate is known. Does it matter how we characterize or how a party would characterize the damages that we're talking about here, whether they're compensatory, contractual, or physical? Well, again, public utilities have to invest in equipment in order to service their customers. They're required to. Part of being approved as a public utility by the FCC mandates that the public utility purchase the assets in order to provide the service. SIC did that, and its claim is that the rate that it was provided did not give it sufficient revenue to provide a return on those assets. Thank you, counsel. I think we appreciate the arguments of both counsel, and we'll take the case on the submission. Thank you very much. The Honorable Court is adjourned until tomorrow morning at 10 a.m.